UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                                                          :
LLOYD BROOKS, on behalf of himself and
others similarly situated,                                :

                        Plaintiffs,                       :

                                                                    C.A. No. 17-CV-4186
                    - against -                           :

BROOKLYN EVENTS CENTER, LLC d/b/a          :          **CLASS ACTION COMPLAINT**
BARCLAYS CENTER, BROOKLYN SPORTS
& ENTERTAINMENT, ANSCHUTZ                   :          **(Trial by Jury Demanded)**
ENTERTAINMENT GROUP, INC. and AEG
MANAGEMENT BROOKLYN, LLC                    :

                        Defendants.                       :

----------------------------------------------------------x

On behalf of himself and all others similarly situated, Plaintiff Lloyd Brooks ("Plaintiff"
or "Mr. Brooks"), by and through his attorneys, the Legal Action Center of the City of New York,
Inc. ("Legal Action Center") and Francis & Mailman, P.C., respectfully alleges as follows:

## NATURE OF THE ACTION

1.      This is a class action under the New York State Human Rights Law ("NYSHRL"),
N.Y. Exec. Law § 290 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin.
Code § 8-101 *et seq.*; Article 23-A of the New York Correction Law ("Article 23-A"), N.Y. Correct.
Law §§ 750-755; the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; and, the
New York Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.*  This case is
brought on behalf of employees and applicants for employment with Defendant Brooklyn Events
Center, LLC d/b/a Barclays Center, Defendant Brooklyn Sports & Entertainment, Defendant
Anschutz Entertainment Group, Inc., and Defendant AEG Management Brooklyn, LLC (collectively,
"Defendants").

2.      In the summer of 2015, Mr. Brooks sought employment as Facilities Conversion Crew at Barclays Center.  After going through the application and interview process, he was given a conditional offer of employment and subjected to Defendants' background check process.  The night before Mr. Brooks was supposed to commence job orientation, Defendants summarily denied him employment because of a 2011 misdemeanor "hit" reported on a standardized commercial background screen which Defendants failed to provide to him.  Defendants obtained the report from Nationwide Screening Services ("Nationwide"), a consumer reporting agency.  Several days later, Plaintiff eventually learned that Defendants' reason for denying him employment was a 2011 misdemeanor conviction on the Nationwide background report.

3.      Plaintiff contends that Defendants systematically discriminate against job applicants and employees with criminal convictions by routinely rejecting them simply on the basis of their convictions without properly performing the requisite analysis set forth in Article 23-A, in contravention of NYSHRL, NYCHRL, and Article 23-A.

4.      Plaintiff contends that Defendants systematically violate section 1681b(b)(3) of the FCRA by using a consumer report to make an "adverse" employment decision without, beforehand, providing the person who is the subject of the report sufficient and timely notification, along with a copy of the report and a summary of rights under the FCRA, leaving the subject of the report without any time, much less sufficient time, to dispute information in the report or to otherwise address the content of the report.

5.      Plaintiff also contends that Defendants systematically violate section 380-g(d) of the NY FCRA by failing to provide applicants or employees with a copy of Article 23-A, when a consumer report contains criminal conviction information, thwarting the very purpose behind the

enactment of section 380-g(d): the avoidance of senseless discrimination by requiring employers to inform individuals with criminal convictions of their rights and remedies under the law.

6.      Article 23-A and section 296(15) of New York Executive Law were enacted in 1976 because the New York State Legislature and then Governor Hugh Carey recognized these laws were essential to "reverse the long history of employment discrimination against" individuals with convictions. Division of Budget Recommendation on Bill, Bill Jacket, ch. 931, L. 1976; Governor's July 27, 1976 Memorandum on Approving L. 1976, c. 931, 1976 N.Y. Sess. Laws 2458 (McKinney). This action involves Defendants' systematic violations of New York State and New York City's anti-discrimination laws that were enacted to protect individuals with convictions from such blatant discrimination in employment.

7.      The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization" of the consumer information they disseminate. 15 U.S.C. § 1681(b). NY FCRA was enacted for similar purposes. L.1977, c. 867, § 1(d), (e). Congress and the New York Legislature included in their statutory schemes a series of due-process-like protections that impose strict procedural rules on "users of consumer reports," such as Defendants. NY FCRA's protections include a provision to prevent illegal discrimination against individuals with criminal convictions. This action involves Defendants' systematic violations of several of those important rules under FCRA and NY FCRA.

8.      In violation of the NYSHRL, NYCHRL, and Article 23-A, Defendants discriminated against Plaintiff by summarily denying him employment based on a 2011 misdemeanor without complying with Article 23-A. Upon information and belief, every year,

individuals who have applied to Defendants for employment have been similarly aggrieved by the same violations of N.Y. Exec. Law § 296(15), N.Y.C. Admin. Code 8-107(10), Article 23-A, N.Y. Exec. Law § 296(6), and N.Y.C. Admin. Code § 8-107(6).

9.      In violation of the FCRA, Defendants willfully and negligently failed to provide Plaintiff with the mandatory "pre-adverse action notice" and a copy of the background report it obtained from Nationwide, the consumer reporting agency,  along with a statement of his rights under the FCRA, *before* the adverse action occurred, as required by section 1681b(b)(3) of the FCRA.  Upon information and belief, every year, individuals who have applied to Defendants for employment have been similarly aggrieved by the same violation of 15 U.S.C. § 1681b(b)(3).

10.      In violation of the NY FCRA, Defendants willfully and negligently failed to provide Plaintiff with a copy of Article 23-A when the consumer report contained criminal record information, as required by section 380-g(d) of the NY FCRA.  Upon information and belief, every year, individuals who have applied to Defendants for employment have been similarly aggrieved by the same violations of N.Y. Gen. Bus. Law § 380-g(d).

11.      Defendants' routine and systematic violations of these laws caused concrete injury to Plaintiff, and those similarly situated, by, among other things, denying them employment opportunities, invading their privacy, depriving them of information the law explicitly requires them to possess, in order to, among other things, review their background reports prior to Defendants taking adverse action, dispute inaccurate or incomplete information, address or explain the circumstances relating to the adverse information in the reports (*e.g.*, explain their convictions, provide evidence of rehabilitation), challenge the basis for potential rejection, become informed of their rights under both the FCRA and Article 23-A, and enforce their remedies.

12.    On behalf of himself and classes of individuals similarly situated, Plaintiff seeks monetary relief, punitive damages, injunctive and/or declaratory relief, pre-judgment and post-judgment interest, attorneys' fees, costs and expenses, and any other relief as the Court deems just and proper.

## PARTIES

13.    Plaintiff is an adult individual residing in New York, New York.

14.    Plaintiff has one misdemeanor conviction for petit larceny, incurred on February 15, 2011.  He has no other criminal convictions.  Plaintiff was and is qualified for the position of Facilities Conversion Crew at Barclays Center.

15.    Upon information and belief, Defendant Brooklyn Events Center, LLC d/b/a Barclays Center ("Defendant Barclays") owns and oversees the operations of the Barclays Center arena (the "Barclays Center") located at 620 Atlantic Avenue, Brooklyn, New York 11217.  Upon information and belief, Defendant Barclays is a Delaware limited liability company, is licensed to do business in the State of New York, and regularly conducts business in the Eastern District of New York.  Defendant Barclays maintains its headquarters at 15 MetroTech Center, 11th Floor, Brooklyn, New York 11201.

16.    At all relevant times, Defendant Barclays has been an employer as the term is defined by the NYSHRL and the NYCHRL, a private employer as the term is defined by Article 23-A, and a person as that term is defined by the FCRA, the NY FCRA, the NYSHRL and the NYCHRL.

17.    Upon information and belief, Defendant Brooklyn Sports & Entertainment ("Defendant BSE") "manages and controls Barclays Center." http://www.barclayscenter.com/center-info/about-us.  Upon information and belief, Defendant

BSE is authorized to conduct business in the State of New York and regularly conducts business in the Eastern District of New York. Defendant BSE maintains its headquarters at 15 MetroTech Center, 11th Floor, Brooklyn, NY 11201.

18.    At all relevant times, Defendant BSE has been an employer as the term is defined by the NYSHRL and the NYCHRL, a private employer as the term is defined by Article 23-A, and a person as that term is defined by the FCRA, the NY FCRA, the NYSHRL and the NYCHRL.

19.    Upon information and belief, Defendant Anschutz Entertainment Group, Inc. ("Defendant Anschutz") is a Colorado corporation, licensed to do business in the State of New York, and regularly conducts business in the Eastern District of New York. Defendant Anschutz maintains its headquarters at 800 W Olympic Blvd, Suite 305, Los Angeles, California 90015.

20.    Upon information and belief, Defendant AEG Management Brooklyn, LLC ("Defendant AEG Management") is a Delaware limited liability company, licensed to do business in the State of New York, and regularly conducts business in the Eastern District of New York. At all relevant times, AEG Management owns, operates, and/or maintains an office at 620 Atlantic Avenue, Brooklyn, New York 11217.

21.    At all relevant times, Defendant Anschutz and Defendant AEG Management have each been an employer as the term is defined by the NYSHRL and the NYCHRL, a private employer as the term is defined by Article 23-A, and a person as that term is defined by the FCRA, the NY FCRA, the NYSHRL and the NYCHRL.

22.    Upon information and belief, Defendant Anschutz and Defendant AEG Management (collectively, "AEG") operate and manage Barclays Center, and provide guest services and arena support services at the Barclays Center.

23.     Upon information and belief, had Mr. Brooks not been unlawfully denied employment, he would have been employed by all Defendants.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over this matter based upon 28 U.S.C. §§ 1331, 1367 and 15 U.S.C. § 1681p.

25.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## ADMINISTRATIVE PROCEDURE

26.     Following commencement of this action, Plaintiff will serve a copy of the Complaint on the New York City Commission on Human Rights and the Office of Corporation Counsel, thereby satisfying the notice requirements of section 8-502 of the New York City Administrative Code.

## STATUTORY FRAMEWORK

### Article 23-A and Anti-Discrimination Laws

27.     Plaintiff is one of millions of New Yorkers who is protected by an interrelated series of New York State and New York City laws prohibiting unfair discrimination against individuals with criminal convictions.  Chief among those laws is Article 23-A, sections 750-755 of New York Correction Law, enacted in 1976, "to establish reasonable procedures to prevent unfair discrimination against former criminal offenders in regard to licensure and employment," as then Governor Hugh L. Carey stated in his memorandum approving Article 23-A.  Governor's July 27, 1976 Memorandum on Approving L. 1976, c. 931, 1976 N.Y. Sess. Laws 2458 (McKinney).

28.     Section 752 of New York Correction Law prohibits adverse action or the denial of employment to an individual on the basis of a prior criminal conviction unless

(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or

(2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

When making a determination under section 752 of New York Correction Law, both private employers and public agencies are required to consider *all* of these eight factors:

(a)    The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

(b)    The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

(c)    The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

(d)    The time which has elapsed since the occurrence of the criminal offense or offenses.

(e)    The age of the person at the time of occurrence of the criminal offense or offenses.

(f)    The seriousness of the offense or offenses.

(g)    Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

(h)    The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753(1).

29.    Furthermore, if an applicant has a Certificate of Relief from Disabilities or a Certificate of Good Conduct, then an employer is required to consider the certificate when making a determination under section 752 of New York Correction Law.  N.Y. Correct. Law § 753(2).

30.     The other sections of Article 23-A (sections 750, 751, 754, and 755) also contain significant information, including additional rights and remedies for individuals with convictions. The definition of certain terms are set forth in section 750 of New York Correction Law, and the applicability of the law is set forth in section 751.  Section 754 of New York Correction Law permits "any person previously convicted of one or more criminal offenses who has been denied . . . employment" to request the reasons for denial from the employer, which the employer is supposed to respond to in writing within 30 days of the request.  Section 755 of New York Correction Law sets forth information on enforcement of the law.

31.     Section 296(15) of NYSHRL, enacted in 1976 along with its counterpart Article 23-A, makes it:

> an unlawful discriminatory practice for any person, agency, bureau, corporation or association . . .  to deny . . . employment to any individual by reason of his or her having been convicted of one or more criminal offenses . . . when such denial is in violation of the provisions of article twenty-three-A of the correction law.

32.     In enacting Article 23-A and section 296(15) of NYSHRL in 1976, the Legislature and then Governor Hugh Carey recognized that these laws were essential to "reverse the long history of employment discrimination against" individuals with convictions by "eliminating many of the obstacles to employment."  Division of Budget Recommendation on Bill, Bill Jacket, ch. 931, L. 1976; Memorandum in Support, Bill Jacket, ch. 931, L. 1976 (legislative sponsors Senator Ralph J. Marino & Assemblyman Stanley Fink); Governor's July 27, 1976 Memorandum on Approving L. 1976, c. 931, 1976 N.Y. Sess. Laws 2458 (McKinney).

33.     NYCHRL states "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based

on . . . conviction or arrest record." N.Y.C. Admin. Code § 101. In line with that articulated policy, under NYCHRL, it is also "unlawful discriminatory practice" for an employer to deny "employment to any person" based on a criminal conviction when the denial "is in violation of the provisions of article twenty-three-a of the correction law." N.Y.C. Admin. Code § 8-107(10)(a).[1]

34.    Under both NYSHRL and NYCHRL, it is also "unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" under these laws, "or to attempt to do so." N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6).

35.    All of the anti-discrimination laws referenced herein impose a duty on companies not to discriminate against or to aid and abet discrimination against individuals with criminal convictions by denying them employment simply because they have criminal convictions. Companies like Defendants may not impose flat bans on hiring or employing individuals with criminal records or fail to properly engage in an individualized evaluation of all the Article 23-A factors.

**FCRA and NY FCRA**

36.    The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization" of the consumer

---

[1]    Prior to October 27, 2015, the effective date of the NYC Fair Chance Act, section 8-107(10)(a) stated, in pertinent part, that:

> [i]t shall be unlawful discriminatory practice for any person to deny . . . employment to any person by reason of his or her having been convicted of one or more criminal offenses . . . when such denial is in violation of the provisions of article twenty-three-a of the correction law.

information they disseminate.  15 U.S.C. § 1681(b).  NY FCRA was enacted for similar purposes. L.1977, c. 867, § 1(d), (e).  Congress and the New York Legislature included in their statutory schemes a series of due-process-like protections that impose strict substantive rules on "users of consumer reports," such as Defendants.

37.    Under the FCRA, a "user" of a consumer report, such as Defendants, who intend to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant/employee, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action.  15 U.S.C. § 1681b(b)(3)(A). After an adverse action occurs, the consumer-applicant/employee must receive a second notice, mandated by 15 U.S.C. § 1681m.

38.    The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the job applicant or employee that he is about to experience an adverse action, such as a rejection, based on the content of a report, and to provide him an opportunity to review the report in order to address the information in it or challenge the accuracy or relevancy of the information with the consumer reporting agency or the user (e.g., the employer) before the job prospect is lost.

39.    In addition, under the NY FCRA,

[w]hen a consumer reporting agency provides a consumer report that contains criminal conviction information . . . to a user, the person, firm, corporation or other entity requesting such report shall provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law governing the licensure and employment of persons previously convicted of one or more criminal offenses.

N.Y. Gen. Bus. Law § 380-g(d).

40.    As set forth above, it is the public policy of New York State "to encourage the licensure and employment of persons previously convicted of one or more criminal offenses." N.Y. Correct. Law § 753(1)(a).  Consistent with the public policy of this State, in 2008, the New York Legislature added to section 380-g a requirement that users of consumer reports, such as Defendants, provide job applicants and employees with a copy of Article 23-A when a consumer report contains criminal conviction information.  L. 2008, c. 465, § 2, eff. Feb. 1, 2009.  The purpose of this requirement is to inform individuals with criminal records of their rights and remedies under the law and for employers to be informed of their obligations under the law in order to avoid illegal discrimination.  The New York State Assembly's Memorandum in Support of the Legislation stated, in part:

> Once [criminal history information] is obtained, employers have repeatedly dismissed qualified applicants and terminated employees based solely on their criminal histories, even if there is no direct relationship between the criminal offense(s) and the job and no unreasonable risk to the safety to the public or property, the criteria upon which an employer can deny a job to an applicant or terminate an existing employee.
>
> *The enactment of this bill will help ensure that employers and prospective employees are informed about the mandates of Article 23-A of the correction law. This will help to avoid illegal discrimination against persons with a criminal conviction.*

N.Y.S. Assembly's Memorandum in Support of the Legislation – Bill No. 10288A, 2007-2008 Term. (Emphasis added).

## STATEMENT OF FACTS

**The Facts Pertaining to Class Representative Plaintiff Lloyd Brooks**

41.    Prior to and throughout the employment application process with Defendants, Mr. Brooks was unaware of his rights as an individual with a criminal conviction to be free of illegal discrimination under Article 23-A, and unaware of his consumer rights under the FCRA and the NY FCRA.

42.    On or about July 14, 2015, Mr. Brooks applied for employment as Facilities Conversion Crew with Barclays Center by submitting a pre-screening application to Brooklyn Workforce1.  Upon information and belief, the application did not contain any question about criminal convictions.

43.    On or about the same day, July 14, 2015, Mr. Brooks received an email from the Barclays Center Workforce1 Recruitment Team informing him that he had been selected to participate in a Barclays Center Recruitment event on or around July 17, 2015 for a Facilities Conversion Crew position.

44.    On or around July 17, 2015, Mr. Brooks attended the Barclays Center pre-screening appointment.  Upon information and belief, Mr. Brooks was one of only two individuals at the pre-screening who was provided with an admission ticket to interview with Defendants at the Barclays Center, 620 Atlantic Avenue, Brooklyn, New York.

45.    On or about July 27, 2015, Mr. Brooks received an email from the Workforce1 Barclays Center Recruitment Team with the following subject line, "REMINDER: Barclays Center Employer Interview."  The email stated, in part: "**Congratulations!** This is a reminder that you have an appointment with a hiring manager from AEG, the company that provides guest services and arena support services at the Barclays Center."  The email informed Mr. Brooks that

the interview for the Facilities Conversion Crew position was scheduled for 11:00 AM on July 28, 2015, at Barclays Center in Brooklyn, 620 Atlantic Avenue, Brooklyn, NY 11217.  The email also stated, in part: "This is the only time that AEG hiring managers are available to meet with you."

46.     On or about July 28, 2015, Mr. Brooks attended the scheduled interview at the Barclays Center.  Before he was interviewed, Mr. Brooks was asked to complete another application with the Barclays Center logo on it, which he did.  Upon information and belief, the application did not contain a question about criminal conviction history and the application appeared to be the same or similar to the application he had previously completed.  Mr. Brooks was also asked to complete background authorization and drug screening forms.

47.     Mr. Brooks turned in the application, but was told to keep the other forms until after the completion of the interview.  He was then called into an interview by Defendants.  Upon information and belief, Mr. Brooks was interviewed by two AEG Barclays Center employees.  After the interview, the interviewers asked him to step out so they could discuss his candidacy and make an employment decision.  After some time, Mr. Brooks was called back into the room and told that he was strongly recommended for the job based on his qualifications and that he would be a great asset to the organization.

48.     When Mr. Brooks left the interview room, he was instructed by the assistant to go to a table to obtain information about his orientation start date.  He did so and was provided with an orientation start date of August 13, 2015.  Mr. Brooks was then instructed to go to another table to have his picture taken for a company ID.  Subsequent to having his photograph taken, Mr. Brooks was instructed to hand in the other forms, which he did.  Upon information and belief, Mr. Brooks was not asked about his criminal conviction history during the application or interview process.

-14-

49.     On or about the same day, July 28, 2015, Mr. Brooks received an email with drug test screening instructions and the locations of LabCorp sites near Mr. Brooks' residence. An individual named Justin Thomas with an "@barclayscenter.com" email address was copied on the email. Mr. Brooks completed the drug test on or about July 30, 2015, which he cleared.

50.     Upon information and belief, at all relevant times, Justin Thomas worked for Defendants as a human resources manager with AEG Barclays Center and maintained an "@barclayscenter.com" email address.

51.     On the evening of August 12, 2015, the night prior to his scheduled orientation, Mr. Brooks received an adverse action email from Justin Thomas with the subject line "A Important Message from Barclays Center Human Resources Department." The email stated, in part: "This letter is being sent to you in compliance with the Fair Credit Reporting Act, 15 U.S.C. Section 1681(m)(a), to inform you that *you have been denied a position with our organization* based on the information received from the consumer reporting agency listed below during a pre-employment background investigation." (Emphasis added). The adverse action email listed contact information for Nationwide, the consumer reporting agency, but did not contain a copy of the consumer report, a copy of Article 23-A, or any details about the adverse information in the report that led to the Defendants' denying Mr. Brooks employment. The adverse action email contained no information for Justin Thomas other than his email address.

52.     Mr. Brooks was stressed, confused, and anxious because he lost a job opportunity the night before he was supposed to start orientation and did not know the reason. He immediately looked for Justin Thomas's business telephone number and contacted him the next day, August 13, 2015, the day Mr. Brooks was supposed to commence orientation. Without knowing what was reported in the background report because Defendants had not provided him a copy, Mr. Brooks

asked Justin Thomas why he was denied employment.  Justin Thomas informed him that he could not provide Mr. Brooks with that information.  Mr. Brooks explained to Justin Thomas that if he did not know why he was being denied employment, then he could not address the issue.  Justin Thomas told him that it would take three to five days for Mr. Brooks to receive the background check.  Mr. Brooks inquired if there were any other positions available at the Barclays Center, and Justin Thomas responded by telling Mr. Brooks he would have to look on the Barclays Center's website.  At no time during the phone conversation did Justin Thomas indicate that Mr. Brooks was denied employment because of his criminal record.

53.    Defendants took adverse action against Mr. Brooks by denying him employment based on the 2011 misdemeanor reported in the Nationwide background report.  They did so without providing him the requisite pre-adverse action notice and a copy of his background report along with as statement of his rights under FCRA, in clear contravention of the protections afforded to job applicants based on the FCRA.  Defendants also did not provide Mr. Brooks with a copy of Article 23-A.

54.    Because Mr. Brooks was not provided with the requisite pre-adverse action notice and a copy of his background report along with a statement of his rights under FCRA, Mr. Brooks was deprived of his right to review the background report before being denied employment based on it, and was deprived of his right to address the adverse information in the report, for example, by providing an explanation of the circumstances of his misdemeanor conviction and other information that Defendants were required to consider under Article 23-A.  He was also deprived of his right to address the accuracy or completeness of the information in the report and to receive information about his legal rights under the FCRA and Article 23-A – information he did not have.

55.    On or around August 17, 2015, five days after Mr. Brooks was denied employment based on a background check that he had not yet seen, Mr. Brooks received a letter, dated August 11, 2015, from Human Resources Barclays Center purporting to be a pre-adverse action letter and enclosing a background report and a summary of rights under FCRA.  Defendants failed to include a copy of Article 23-A.  The return address on the envelope belonged to Nationwide and the envelope was postmarked August 13, 2015 – the day after Defendants denied Mr. Brooks employment by email.

56.    The Nationwide background report attributed one April 20, 2011 misdemeanor conviction for petit larceny to Mr. Brooks.  The report was inaccurate in that it misreported the disposition date and the offense date of the misdemeanor conviction.

57.    After Mr. Brooks reviewed the report, he contacted Justin Thomas of AEG Barclays Center the following day, on or around August 18, 2015, and asked him why he was being denied employment.  Justin Thomas told Mr. Brooks that he would have to call the company that performed the background check (Nationwide) to discuss the reason.  Mr. Thomas then told Mr. Brooks that he would have to get the conviction expunged from his record in order to be reconsidered for the Barclays Center position.  Justin Thomas did not give Mr. Brooks an opportunity to provide Defendants with any information relating to his criminal conviction or the Article 23-A factors.  Nor did Justin Thomas elicit any information from Mr. Brooks relating to his criminal conviction or the Article 23-A factors.  Mr. Brooks was unaware of his rights under Article 23-A to be free of illegal discrimination based on his sole criminal conviction.  Had Defendants provided Mr. Brooks with a copy of Article 23-A, he would have reviewed his rights and remedies under the law and he would have attempted to contact Justin Thomas's supervisor or someone in a higher position about the discriminatory job denial.

58.     That same day, because Justin Thomas advised him to call Nationwide, Mr. Brooks contacted Nationwide and asked for the reason he was denied the job.  A Nationwide representative told him to contact the employer because Nationwide did not make the decision.  After speaking with Nationwide, Mr. Brooks contacted Justin Thomas again by telephone.  When he finally got through, he again asked Justin Thomas for the reason he had been denied employment. Justin Thomas ultimately told him that he should look for employment options somewhere else.

59.     Defendants automatically denied Mr. Brooks employment based on the criminal record "hit" on the Nationwide background report – a 2011 misdemeanor for petit larceny – without properly providing Mr. Brooks with an opportunity to address the information in the report and without evaluating all of the Article 23-A factors in order to determine whether Plaintiff's employment posed an unreasonable risk or his single misdemeanor was directly related to the position sought.  Among other things, Defendants did not give Mr. Brooks the opportunity to provide any information about the circumstances relating to his only criminal conviction, evidence of rehabilitation or good conduct, or whether the offense would have impaired his ability to do the job.  Neither did Defendants seek that information from Mr. Brooks or other sources.  Simply put, Defendants did not have sufficient information to evaluate all of the requisite eight individualized factors under New York's anti-discrimination laws.

60.     Throughout the entire employment application process, Defendants never provided Mr. Brooks with a copy of Article 23-A.  As a result, among other things, Defendants deprived Mr. Brooks of the opportunity to be informed of his rights and remedies as someone with a prior criminal conviction under Article 23-A, including, without limitation, denying him information about the factors employers are required to evaluate or his right to request and receive a written explanation from Defendants setting forth the reasons for denial.  Because he was not otherwise

aware of his rights and remedies under the law, he could not effectively and promptly contest Defendants' discriminatory actions.  Had Defendants provided Mr. Brooks with a copy of Article 23-A, he would have attempted to contact Justin Thomas's supervisor or someone in a higher position about the job denial and would have tried to explain why Defendants should not have denied him the job.  Mr. Brooks would have advocated for compliance with the law.

## CLASS ACTION ALLEGATIONS

61.    Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the Classes defined as follows:

a.    **NYS Discrimination Class:**  All employees or applicants for employment with Defendants in New York State, beginning three years prior to the date of the filing of this Complaint and continuing through the resolution of this action, who were denied employment based on criminal conviction information without Defendants having performed a proper Article 23-A analysis.

b.    **NYC Discrimination Class:**  All employees or applicants for employment with Defendants in New York City, beginning three years prior to the date of the filing of this Complaint and continuing through the resolution of this action, who were denied employment based on criminal conviction information without Defendants having performed a proper Article 23-A analysis.

c.    **FCRA Class:**  All employees or applicants for employment of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report that was used by Defendants to make an adverse employment decision regarding such employee or applicant for employment, within two years prior to the filing of this action and extending through the resolution of this case, and for whom Defendants failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.

d.    **NY FCRA Class:**  All employees or applicants for employment with Defendants in New York State who were the subject of a consumer report that contained criminal conviction information that was provided to Defendants, beginning two years prior to the date of the filing of this Complaint and continuing through the resolution of this action, and for whom Defendants failed to provide the employee or applicant with a copy of Article 23-A.

62.    Plaintiff reserves the right to amend the definition of each Class based on discovery or legal developments.

63.    **Numerosity.  FED. R. CIV. P. 23(a)(1).**  The members of each Class are so numerous that joinder of all is impractical.  Upon information and belief, the number of job applicants and employees harmed by Defendants' practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendants.

64.    **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of each Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

a.   whether Defendants discriminated against Plaintiff and the NYS Discrimination Class when denying them employment without conducting a proper Article 23-A analysis, in violation of  the NYSHRL and Article 23-A, or whether Defendants aided and abetted others to engage in such discrimination, in violation of the NYSHRL;

b.   whether Defendants discriminated against Plaintiff and the NYC Discrimination Class when denying them employment without conducting a proper Article 23-A analysis, in violation of  the NYCHRL and Article 23-A, or whether Defendants aided and abetted others to engage in such discrimination, in violation of the NYCHRL;

c.   whether Defendants failed to provide each employee or applicant for employment a copy of their consumer report at least five business days before they took adverse action based upon the consumer report, in violation of 15 U.S.C. § 1681b(b)(3)(A)(i);

d.   whether Defendants failed to provide each employee or applicant for employment a copy of their written notice of FCRA rights at least five business days before they took adverse action based upon the consumer report, in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii);

e.   whether Defendants acted willfully or negligently in disregard of the rights of employees and applicants by failing to permit their employees and automated systems to send consumers (employees and applicants) their full consumer report and a written statement of their FCRA rights at least five business days before taking adverse action based on the consumer report;

f.   whether Defendants failed to provide each employee or applicant with Defendants in New York State with a copy of Article 23-A when they were the subject of a consumer report containing criminal conviction information that was provided to Defendants, in violation of N.Y. Gen. Bus. Law § 380-g(d); and,

g.   whether Defendants acted willfully or negligently in disregard of the rights of employees and applicants by failing to permit their employees and automated systems to send consumers (employees and applicants seeking employment in New York State) a copy of Article 23-A when they were the subject of a consumer report containing criminal conviction information that was provided to Defendants.

65.    **Typicality.  FED. R. CIV. P. 23(a)(3)**.  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for relief that he seeks for absent Class members.

66.    **Adequacy.  FED. R. CIV. P. 23(a)(4).**  Plaintiff is an adequate representative of each Class because his interests are aligned with, and are not antagonistic to, the interests of the members of each Class he seeks to represent, he has retained counsel competent and experienced

in such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of members of each Class.

67.    **Predominance and Superiority.  FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for the members of each Class to individually redress effectively the wrongs done to them.  Even if the members of each Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT I
### Criminal Record Discrimination
### NYSHRL and Article 23-A
### (On behalf of Plaintiff and NYS Discrimination Class)

68.    Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

69.    It is the public policy of the State of New York to encourage the "employment of persons previously convicted of one or more criminal offenses."  N.Y. Correct. Law § 753(1).

70.     Section 296(15) of New York Executive Law prohibits a "person, agency, bureau, corporation or association" from discriminating against an individual by denying him or her employment "by reason of his or her having been convicted of one or more criminal offenses . . . when such denial is in violation of the provisions of article twenty-three-A of the correction law."

71.     As set forth the in the preceding paragraph, section 296(15) of New York Executive Law incorporates Article 23-A.

72.     Defendants engaged in systematic discrimination against Plaintiff and the NYS Discrimination Class by denying them employment based simply on criminal conviction information, in violation of N.Y. Exec. Law § 296(15) and Article 23-A.

73.     Prior to denying Plaintiff and the NYS Discrimination Class employment, Defendants failed to conduct a proper evaluation of all the requisite factors set forth in Article 23-A, in violation of N.Y. Exec. Law § 296(15) and Article 23-A.

74.     By reason of the acts of discrimination detailed herein, Defendants have caused Mr. Brooks and the NYS Discrimination Class to suffer damages, including, but not limited to, deprivation of their rights, lost employment opportunities, loss of past and future income, loss of other employment benefits, and emotional injuries.

WHEREFORE, Plaintiff and the NYS Discrimination Class seeks relief against Defendants as follows:

A.     An order certifying the case as a class action on behalf of the proposed NYS Discrimination Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.     An award of compensatory damages;

C.       An award for injunctive and declaratory relief to rectify Defendants' discriminatory policies;

D.       An award of pre-judgment and post-judgment interest as provided by law; and

E.       Such other relief as the Court deems just and proper.

**COUNT II**
**Criminal Record Discrimination**
**NYCHRL and Article 23-A**
**(On behalf of Plaintiff and NYC Discrimination Class)**

75.       Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

76.       It is unlawful discrimination under section 8-107(10)(a) of the N.Y.C. Administrative Code for an employer to deny "employment to any person" based on a criminal conviction when the denial "is in violation of the provisions of article twenty-three-a of the correction law."

77.       As set for the in the preceding paragraph, section 8-107(10)(a) of the N.Y.C. Administrative Code incorporates Article 23-A.

78.       Defendants engaged in systematic discrimination against Plaintiff and the NYC Discrimination Class by denying them employment based simply on criminal conviction information, in violation of N.Y.C. Admin. Code § 8-107(10)(a) and Article 23-A.

79.       Prior to denying employment to Plaintiff and the NYC Discrimination Class, Defendants failed to conduct a proper evaluation of all the requisite factors set forth in Article 23-A, in violation of N.Y.C. Admin. Code § 8-107(10)(a) and Article 23-A.

80.       By reason of the acts of discrimination detailed herein, Defendants have caused Plaintiff and the NYC Discrimination Class to suffer damages, including, but not limited to,

deprivation of their rights, lost employment opportunities, loss of past and future income, loss of other employment benefits, and emotional injuries.

81.     Defendants' unlawful discriminatory actions constitute malicious, willful and wanton violations of NYCHRL for which Plaintiff and the NYC Discrimination Class are entitled to an award of punitive damages.

WHEREFORE, Plaintiff and the NYC Discrimination Class seek relief against Defendants as follows:

A.     An order certifying the case as a class action on behalf of the proposed NYC Discrimination Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.     An award of compensatory damages;

C.     An award of punitive damages;

D.     An award for injunctive and declaratory relief to rectify Defendants' discriminatory policies;

E.     An award of pre-judgment and post-judgment interest as provided by law;

F.     An award of attorneys' fees and costs; and

G.     Such other relief as the Court deems just and proper.

## COUNT III
## Aiding and Abetting Criminal Record Discrimination
## NYSHRL
## (On behalf of Plaintiff and NYS Discrimination Class)

82.     Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

83.     Pursuant to New York Executive Law 296(6), "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

84.     By its conduct, action, or inaction, Defendant Barclays aided, abetted, incited, compelled, or coerced others to engage in criminal record discrimination against Plaintiff and the NYS Discrimination Class, or attempted to do so, in violation of N.Y. Exec. Law § 296(6).

85.     By its conduct, action, or inaction, Defendant BSE aided, abetted, incited, compelled, or coerced others to engage in criminal record discrimination against Plaintiff and the NYS Discrimination Class, or attempted to do so, in violation N.Y. Exec. Law § 296(6).

86.     By its conduct, action, or inaction, AEG aided, abetted, incited, compelled, or coerced others to engage in criminal record discrimination against Plaintiff and the NYS Discrimination Class, or attempted to do so, in violation of N.Y. Exec. Law § 296(6).

87.     By reason of the acts of discrimination detailed herein, Defendants have caused Plaintiff and the NYS Discrimination Class to suffer damages, including, but not limited to, deprivation of their rights, lost employment opportunities, loss of past and future income, loss of other employment benefits, emotional injuries.

WHEREFORE, Plaintiff and the NYS Discrimination Class seeks relief against Defendants as follows:

A.       An order certifying the case as a class action on behalf of the proposed NYS Discrimination Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.       An award of compensatory damages;

C.       An award for injunctive and declaratory relief to rectify Defendants' discriminatory policies;

D.       An award of pre-judgment and post-judgment interest as provided by law; and

E.       Such other relief as the Court deems just and proper.

<div align="center">

**COUNT IV**
**Aiding and Abetting Criminal Record Discrimination**
**NYCHRL**
**<u>(On behalf of Plaintiff and NYC Discrimination Class)</u>**

</div>

88.       Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

89.       Pursuant to section 8-107(6) of N.Y.C. Administrative Code, "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

90.       By its conduct, action, or inaction, Defendant Barclays aided, abetted, incited, compelled, or coerced others to engage in criminal record discrimination against Plaintiff and the NYC Discrimination Class, or attempted to do so, in violation of section 8-107(6) of N.Y.C. Administrative Code.

91.       By its conduct, action, or inaction, Defendant BSE aided, abetted, incited, compelled, or coerced others to engage in criminal record discrimination against Plaintiff and the

NYC Discrimination Class, or attempted to do so, in violation of section 8-107(6) of the N.Y.C. Administrative Code.

92. By its conduct, action, or inaction, AEG aided, abetted, incited, compelled, or coerced others to engage in criminal record discrimination against Plaintiff and the NYC Discrimination Class, or attempted to so, in violation of section 8-107(6) of N.Y.C. Administrative Code.

93. By reason of the acts of discrimination detailed herein, Defendants have caused Plaintiff and the NYC Discrimination Class to suffer damages, including, but not limited to, lost employment opportunities, loss of past and future income, loss of other employment benefits, and emotional injuries.

94. Defendants' unlawful discriminatory actions constitute malicious, willful and wanton violations of NYCHRL for which Plaintiff and the NYC Discrimination Class are entitled to an award of punitive damages.

WHEREFORE, Plaintiff and the NYC Discrimination Class seek relief against Defendants as follows:

A. An order certifying the case as a class action on behalf of the proposed NYC Discrimination Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of compensatory damages;

C. An award of punitive damages;

D. An award for injunctive and declaratory relief to rectify Defendants' discriminatory policies;

E. An award of pre-judgment and post-judgment interest as provided by law;

F.    An award of attorneys' fees and costs; and

G.    Such other relief as the Court deems just and proper.

**COUNT V**
**Failure to Provide Pre-Adverse Action Notice Requirements**
**Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)**
**(On behalf of Plaintiff and FCRA Class)**

95.    Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

96.    Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

97.    The background reports ordered by Defendants are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

98.    The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report *and* a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action.  15 U.S.C. § 1681b(b)(3)(A).

99.    For purposes of this requirement, an "adverse action" includes "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."  15 U.S.C. § 1681a(k)(1)(B)(ii).

100.    Defendants are each a "person" that regularly uses background reports for employment purposes.

101.    The FCRA requires Defendants, as users of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the

-29-

consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A).

102.    Defendants willfully or negligently violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the FCRA Class the following before using such reports:  (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and, (c) a written description of the consumer's rights under the FCRA, and thereby denied the consumers sufficient time to be able to review and dispute or address the report before Defendants took adverse action on their employment applications, promotion applications or employment.

103.    Defendants were aware of their obligations under the FCRA as they relate to employment because they hired a consumer reporting agency not only to perform their background checks but also to (attempt to) provide Defendants' pre-adverse action notices to job applicants and employees.  Defendants' willfully and recklessly disregarded the requirements of section 1681b(b)(3) by crafting and designing a system so that the pre-adverse action notice always gets sent *after* Defendants have taken adverse action.

104.    Defendants' violations of the FCRA as alleged herein were willful and reckless within the meaning of the FCRA as Defendants knew or should have been aware of the FCRA's requirements through the statute's plain language and other available guidance, but nonetheless failed to comply with those requirements.  Because the FCRA was enacted in 1970, Defendants have had years to become compliant but have failed to do so.

105.    By reason of Defendants' violations of FCRA detailed herein, Defendants have caused Plaintiff and the FCRA Class to suffer injury because, among other things, they were not provided with the mandatory pre-adverse action notice and a copy of their background reports, they could not review their background reports prior to Defendants taking adverse action, they

could not address the adverse information in the background reports, they could not dispute inaccurate or incomplete information, they could not challenge the basis for potential rejection, they were not informed of their rights under the FCRA, and their privacy was invaded.

WHEREFORE, Plaintiff and the FCRA Class pray for relief as follows:

A.      An order certifying the case as a class action on behalf of the proposed FCRA Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.      An award of actual, statutory and punitive damages for Plaintiff and the FCRA Class;

C.      An award of pre-judgment and post-judgment interest as provided by law;

D.      An award of attorneys' fees and costs; and,

E.      Such other relief as the Court deems just and proper.

<div align="center">

**COUNT VI**
**Failure to Provide Article 23-A**
**N.Y. Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-g(d)**
**(On behalf of Plaintiff and NY FCRA Class)**

</div>

106.    Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

107.    Plaintiff is a "consumer," as defined by the NY FCRA, N.Y. Gen. Bus. Law § 380-a(b).

108.    The background reports ordered by Defendants are "consumer reports" within the meaning of N.Y. Gen. Bus. Law § 380-a(c).  Defendants regularly use consumer reports for employment purposes.

109.    NY FCRA provides:

[w]hen a consumer reporting agency provides a consumer report that contains criminal conviction information . . . to a user, the person, firm, corporation or other entity requesting such report shall provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law governing the licensure and employment of persons previously convicted of one or more criminal offenses.

N.Y. Gen. Bus. Law § 380-g(d).

110.    Defendants are each a "user" of consumer reports within the meaning of N.Y. Gen. Bus. Law § 380-a(i).

111.    Defendants are each a "person" within the meaning of N.Y. Gen. Bus. Law 380-a(a), and Defendants are each a "firm," corporation" or "other entity" as those terms are used in N.Y. Gen. Bus. Law § 380-g(d).

112.    Defendants willfully and negligently violated section 380-g(d) of New York General Business Law by failing to provide Plaintiff and the NY FCRA Class a copy of Article 23-A.

113.    Defendants' violations of section 380-g(d) of NY General Business Law as alleged herein were willful and reckless within the meaning of the FCRA as Defendants knew or should have been aware of the law's requirements through the statute's plain language, but nonetheless failed to comply with those requirements.  Defendants have had years to become compliant with the law.

114.    By reason of Defendants' violations of NY FCRA detailed herein, Defendants have caused Plaintiff and the NY FCRA Class to suffer injury by, among other things, depriving them of their consumer rights by not providing them with a copy of Article 23-A, depriving them of being informed of their rights and remedies under Article 23-A, depriving them from immediately and effectively contesting Defendants' discriminatory actions, depriving them of opportunity to

vindicate their rights, creating a risk that applicants would fail to vindicate their rights, and invading their privacy without following the law's mandates.

WHEREFORE, Plaintiff and the NY FCRA Class pray for relief as follows:

A.      An order certifying the proposed NY FCRA Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent the same.

B.      An award of actual and punitive damages for the Plaintiff and the Class;

C.      An award for injunctive and declaratory relief for Plaintiff and the Class;

D.      An award of pre-judgment and post-judgment interest as provided by law;

E.      An award of attorneys' fees and costs; and

F.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  July 14, 2017

<div style="margin-left: 40%;">

**LEGAL ACTION CENTER**

By:    /s/ Monica Welby
       Monica Welby (MW-7373)
       Sally Friedman (SF-3344)
       225 Varick Street, Suite 402
       New York, NY  10014
       Tel:  (212) 243-1313
       Fax:  (212) 675-0286
       Email:  mwelby@lac.org
               sfriedman@lac.org

**FRANCIS & MAILMAN**
James A. Francis (*pro hac vice forthcoming*)
John Soumilas (*pro hac vice forthcoming*)
David A. Searles (*pro hac vice forthcoming*)
100 S. Broad Street, Suite 1902
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000
Email:  jfrancis@consumerlawfirm.com
        jsoumilas@consumerlawfirm.com
        dsearles@consumerlawfirm.com

*Attorneys for Plaintiff and the Classes*

</div>